# Exhibit 18

Control Nos.: 90/009,701 and 90/010,883

## REMARKS / ARGUMENTS

### Claim Rejections under 35 U.S.C. §102

The Examiner has rejected claims 16 and 17 under 35 U.S.C. §102(b) as being anticipated by U.S. Patent No. 5,076,524 to Reh (hereinafter "Reh"). Reconsideration thereof is requested in light of the following.

To establish a case of *prima facie* anticipation, the Examiner must establish that a prior art reference discloses every limitation of the claimed invention either explicitly or inherently. *Atlas Powder Co. v. Ireco Inc.*, 51 USPQ2d 1943, 1945 (Fed. Cir. 1999). The reference must disclose those elements "arranged or combined in the same way as in the claim." *Net MoneyIn, Inc. v. Verisign, Inc.*, 88 U.S.P.Q.2d 1751, 1758-59 (Fed. Cir. 2008). "[D]ifferences between the prior art reference and a claimed invention, however slight, invoke the question of obviousness, not anticipation." *Id*. at 1759-60, citing 35 U.S.C. § 103(a).

**Reh teaches a single not a dual display system**

As the title makes clear, the '978 patent is directed to a dual display system. Such a system includes *two* displays for the benefit of *one* viewer. Should there be any doubt about this basic fact, the patent owner points to the claims of the '978 patent where a *pair* of electronic displays is recited, and to Judge Davis' Markman order in which he uses the word "user," in the singular, no less than 5 times.

Equally clear is that Reh is directed to a single display system. Such a system includes only *one* display for the benefit of *one* viewer. To support this assertion, it can be noted that the claims in Reh refer to a single viewing device, not a pair of viewing devices. In this vein, the Abstract of Reh mentions a single "monitor," not monitors, viewed by a single "passenger." Consistent with this conclusion is that in Figure 4, the screens face away from each other: one display would be directed at a first passenger and the other display would be directed at a second passenger sitting next to the first.

9

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

There is a further consistency check that one can perform to validate the assertion that Reh's invention consists of a single display system, two of which are juxtaposed in Figures 2-4. If Figure 4, for example, represents the juxtaposition of two single display systems, then we would expect all of Reh's claim elements to be included in pairs in Figure 4. And this is indeed the case: there are two tracks 44, two first plates 48, two second plates 52, etc. in Figure 4[1]. Moreover, each element of the pair works independently and uncooperatively with the other. In fact, if there were one seat on the airplane with no adjacent seats, the use of one single display system claimed by Reh would be indicated; if there were two adjacent seats (as in Figure 4), the use of two such systems would be indicated to accommodate two passengers.

In contrast to Reh where each claimed element appears twice in Figures 2-4, in each dual display system shown in the '978 patent, there is just one base and one column.

It is true that in Figures 2-4 of Reh two displays are shown. However, this is not inconsistent with the foregoing conclusion that Reh's invention includes just one display. Because passengers often sit next to each other on an airplane, Reh has juxtaposed two systems together to show two displays but for *two* viewers. Reh could have easily shown just one passenger seat with one system, instead of two passenger seats with two systems. Put another way, on an airplane furnished with Reh's display systems, one expects there to be one and only one display for each passenger seat, and not two displays for each passenger seat as would be the case if Reh's system were a dual display system, which it is not.

Respectfully, it is only with hindsight that the Examiner has combined the two single display systems shown in Figure 3 into one dual display system. But this is not permissible in an anticipation rejection. In *Net MoneyIn*, The Federal Circuit stated that "[I]t is not enough that the prior art reference discloses part of the claimed invention, which an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention. (emphasis added) *Id.* at 1760, citing *In re Arkley*, 455 F.2d 586, 587, 172 U.S.P.Q. 524, 526 (C.C.P.A. 1972) Reh does not teach combining his two single display systems into a dual display system. Again, Reh teaches a

---

[1] Not all these pairs of elements are explicitly shown or labelled in Figure 4, but they are understood to be there.

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

system having just one display for one user, and what is shown in Figures 3 or 4 is merely a juxtaposition of two such systems.

Consequently, claim 16, which recites two displays, is not anticipated by the system taught by Reh, which has just one display.  The same holds true for claim 17.

**The support means is absent in Reh**

One consequence of the fact that claimed elements appear in pairs in Figure 4 is that the system taught in Reh does not have a support means, as the term was defined by Judge Davis. To see this, first note that claims 16 and 17 recite "support means for supporting the arm assembly."  Judge Davis has provided the following definitions.

> arm assembly: a structure having one or more constituent parts connected to and projecting from the support means

> support means: upright 20, circular recess 34, washer 36, and bolt 38 (figure 7)
>  OR
> upright 158, socket 206, plug 208, and bolt 210 (Figure 19)

We conclude that *a support means is a structure having one upright that supports all of the constituent parts of the arm assembly.*

Next, note  that the Examiner points out that Reh's "track 44 allows slide plate 48 to slide in groove 46, slide plate 48 having a second groove 50 allowing second slide plate 52 to slide," and associates this apparatus with the "support means" of claims 16 and 17 of the '978 patent. But this association can't be right because the track 44, the slide plate 48, the groove 46, the second groove 50 and the second slide plate 52 each appears twice in the juxtaposition shown in Figures 3 and 4, one set of elements for the use of one passenger, and the second set for the use of the second passenger.  Assuming, *arguendo*, that any or all of the track 44, the slide plate 48 and the second slide plate 52 can be defined as an upright, then it is *not* true that one upright supports all of the constituent parts of the arm assembly.  In fact, keeping in mind

11

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

that the Examiner has stated that the arm assembly consists of the two joints 40 shown in Figure 4 of Reh, one upright supports solely one constituent part of the arm assembly (one of the joints 40) and the other upright supports solely the other constituent part of the arm assembly (the other joint 40). The inevitable conclusion is that the support means identified by the Examiner falls under neither of the two express definitions of support means provided by Judge Davis.

Since the support means is a means-plus-function limitation governed by 35 U.S.C. §112 ¶6, we still have to determine whether the structure identified by the Examiner is an equivalent to either of the two express definitions of "support means" provided by Judge Davis. We maintain that there is no equivalence because the way in which the two uprights in Reh support the arm assembly is not substantially the same as the way in which the support means of the '978 patent, having just one upright, supports the arm assembly. (Cf. MPEP §2184 II (A): "Whether the prior art element performs the identical function in the claim in substantially the same way…" is probative of equivalence.) In particular, all the elements of the support means taught in the '978 patent work cooperatively to support all of the constituents of the arm assembly. In contrast, the two uprights in Reh work independently and uncooperatively: one upright exclusively supports one half of the arm assembly (i.e., one joint 40) and the other upright exclusively supports the other half of the arm assembly (the other joint 40). In fact, one upright in Reh can be retracted into the armrest, while the other remains extended. Thus, the way in which the support means in Reh, with two uprights, supports the arm assembly is not substantially the same as the way in which the support means in '978 patent, with just one upright, supports the arm assembly. Having non-equivalent supports means, claims 16 and 17 are not anticipated by Reh.

**Reh does not teach an arm assembly**

The Examiner states that the arm assembly in Reh consists of the first joint 40. First, let us give the Examiner the benefit of the doubt and assume that he intended to associate the arm assembly with *both* first joints 40 shown in Figure 4 and not just one first joint 40[2]. We will

---

[2] If only one joint constitutes the arm assembly, then it is not true that both displays are mounted to the arm assembly, in violation of the Court's construction of the function of the mounting means.

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

now show that the two first joints 40 cannot be the arm assembly as the Court construed this term.

In particular, as noted above, the Court defined "arm assembly" as follows.

arm assembly: a structure having one or more constituent parts connected to and projecting from the support means

Given the definition of support means provided by the Court and reproduced above, the constituent parts of the arm assembly must project and be connected to one upright. Now, let us ask: do the two joints 40 connect to one upright? The answer is no. Assuming, *arguendo*, that any or all of the track 44, the slide plate 48 and the second slide plate 52---the elements the Examiner associates with the support means---can be defined as an upright, we clearly see that the constituent parts of the arm assembly as defined by the Examiner do not all project and are connected to one upright. In particular, one of the joints 40 for the use of one passenger is connected to one second slide plate 52; the other joint 40 for the use of the adjacent passenger is connected to the other second slide plate 52. Since the two joints 40 are connected to two respective uprights, the two joints 40 cannot be the arm assembly.

**Reh lacks the base of Claim 17**

Claim 17 recites that the base supports the arm assembly above the support surface, where "support surface" was defined by the Court as the "surface that supports the base." In turn, in his Interview Summary dated 09/28/10, the Examiner wrote that "Base rail 44 and the unmentioned unmoving portion that supports rail 44 is seen as the base member." However, the base rail 44 and "the unmentioned unmoving portion that supports rail 44" are not taught in Reh to be supported by surfaces, let alone a single surface. Clearly, the element identified by the third party requestor as the support surface, viz., "the top of the armrest," (page 21 of the Request for Ex Parte Reexamination dated March 4, 2010) does not support the base. Therefore, the structure identified by the Examiner cannot be a base. Lacking a base, the systems taught in Reh do not anticipate Claim 17.

**Reh lacks a mounting means**

13

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

Claims 16 and 17 recite mounting means for mounting the displays to the arm assembly.  The Court provided two definitions of "mounting means."  Both definitions include "the rear of the display."[3]  In contrast, the second joint 42 of Reh, which the Examiner claims is the mounting means, is disposed at an edge of the display, and not at the rear thereof.  Therefore, the only way for Reh to have a chance at anticipating the mounting means is if disposing the second joint 42 on the edge of the display that is closest to the armrest is equivalent (within the meaning of 35 U.S.C. §112 ¶6) to mounting the joint at the rear of the display.

We therefore ask: "Is mounting joint 42 at the edge equivalent to mounting the joint at the rear of the display?"  The answer is unequivocally "no."

To wit, the Examiner points out that:

> the equivalence of the disclosed structure and the structure of the prior art can be demonstrated by a showing that a person of ordinary skill in the art would have recognized the interchangeability of the element shown in the prior art for the corresponding element disclosed in the specification.

Such a person of ordinary skill in the art would have noted column 1, lines 17-19 of Reh, which read: "Because of safety requirements and customer convenience, the screen must be easily stored and retracted," (emphasis added) which explains the phrase "Stowage Retraction Means" in the title.  Such a person would also have noted that placing the mounting means at the rear of the display would have severely hindered the ability of the screen to be stowable into the armrest, at least without expanding the size of the armrest.  Space being at a premium on an airplane, the person of ordinary skill would have discounted expanding the size of the armrest, and concluded that one cannot place the mounting means at the rear of the display without destroying the intended function of the invention, which function includes that "the screen must be easily stored and retracted."  Therefore, a person of ordinary skill in the art would have recognized that disposing the mounting means on the edge is *not* interchangeable with disposing

---

[3] In the original claim construction chart of March 13, 2008, the rear of the display was included in only one definition of mounting means. In the clarifying opinion of May 30, 2008, the definition of mounting means was modified in the chart so that both definitions included the rear of the display.  In his office action, the Examiner used the incorrect original definition that omitted the rear of the display.

14

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

the mounting means at the rear.  The mounting means in Reh is not equivalent to the mounting means in the '978 patent.

### Claim Rejections Under 35 U.S.C. §103

*Claims 16 and 17*

Claims 16 and 17 have been rejected by the Examiner under 35 U.S.C. §103(a) as being unpatentable over Reh in view of U.S. Patent No. 5,210,656 to Williamson (hereinafter "Williamson").  Reconsideration thereof is requested in light of the following.

According to the ruling of the Supreme Court, the Examiner has the burden to establish that claims 16 and 17 are directed merely to "the predictable use of prior art elements according to their established functions." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727, 82 U.S.P.Q.2d 1385, 1396 (U.S. 2007).  After this ruling, The Federal Circuit reaffirmed that, on the question of obviousness, "a flexible TSM test remains the primary guarantor against a non-statutory hindsight analysis." *Ortho-McNeil Pharmaceutical, Inc. v. Mylan Laboratories, Inc.*, 86 P.Q.2d 1196, 1201-1202 (Fed. Cir. 2008).

**Reh does not teach several claim elements**

As far as can be understood[4], the Examiner has introduced the foregoing obviousness rejection in case someone of ordinary skill would not have recognized that the ball joint of the '978 patent is interchangeable with the two orthogonal cylindrical joint taught in Reh.  Thus, for the purposes of this obviousness rejection, the Examiner is presuming that all the other elements in the '978 claims, besides the ball joint of the mounting means, is anticipated by Reh, and that the ball joint missing in Reh is obviously supplied by Williamson.  But as the patent owner has argued above, Reh's system does not include any of the following: a pair of displays, support means, an arm assembly, and a base.  Thus, respectfully, the Examiner's presumption is not correct.  Nevertheless, in the next section let us examine whether the invention in claims 16 and 17 as a whole, including the mounting means, is rendered obvious by Reh in view of Williamson.

---

[4] This understanding arises, *inter alia*, from the Examiner's statement that "[w]hile it is felt that an ordinary practitioner would have recognized the interchangeability of a ball joint for two orthogonal cylindrical joints, there is no explicit teaching of this in Reh."

15

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

**Neither Reh nor Williamson teaches mounting means**

Whether or not it would have been obvious to replace Reh's two orthogonal cylindrical joint with a ball joint misses the point. The Court deemed "mounting means" to be a means-plus-function limitation that includes the rear of the display. Neither Reh nor Williamson teaches mounting means having structure that includes the rear of the display device or reflective device. Williamson states that "(e)ach of these ball and socket joints 20 has a screw-threaded extension 28 of the ball element of the joint which passes through and is releasably secured to a respective one of the <u>side members 12 and 14</u> of each reflector frame 10." (emphasis added) Thus, both Reh and Williamson teach mounting to an edge. We have already argued that mounting to the edge of the display in Reh is not equivalent to mounting at the rear because mounting at the rear would defeat the intended function of the monitor to be stowable into the armrest. Likewise, mounting to the rear of the reflective membrane 30 in Williamson is not a practical option and not an equivalent to mounting on edge: the actual reflective surface 30 in Williamson is described to be a stretchable membrane (col. 4, lines 1-6), which is relatively thin compared to the frame 10 (see Figure 3), and would be expected to be too fragile and thin to receive mounting means at the rear. Moreover, any mounting means at the rear of the membrane would adversely interfere with both the membranes stretchability and reflective properties. Thus, to recapitulate, neither Reh nor Williamson teaches a mounting means (or equivalent) as defined by the Court, and for this reason, Reh does not render claims 16 and 17 obvious in view of Williamson.

Regardless, let us examine the more general question of whether it would have been obvious to dispose the joint 42 of Reh at the rear of the monitor 38. The patent owner submits that at least for two reasons it would not have been obvious to do so. First, as pointed out above, because one monitor in Figure 4 of Reh is meant for one passenger and the other monitor is meant for another passenger, there would have been no motivation to minimize the gap between the monitors by moving the joints 42 from the inner edge of the respective monitors to the rears thereof. In fact, the opposite is likely true: separating the monitors somewhat allows each monitor to be more in front of each respective passenger and thus provides a better viewing position. In contrast, claims 16 and 17 of the '978 patent is directed to a dual display system where two displays are provided for the use of one viewer. Consequently, "[i]t will generally be

16

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

desirable to minimize the spacing between edges of the displays whether vertically registered or horizontally registered." (col. 2, lines 5-7)  Thus, the inventor of the '978 patent was motivated to dispose the mounting means at the rear of the displays in part to minimize the gap therebetween.  Again, this motivation does not exist in Reh.

A second reason why it would not have been obvious to dispose the joint 42 at the rear of the monitor 38 of Reh is that disposing the joint at the rear would have led to an unsatisfactory result.  In particular, Reh teaches that "[b]ecause of safety requirements and customer convenience, the screen <u>must</u> be easily stored and retracted." (column 1, lines 17-19 with emphasis added)  Placing the mounting means at the rear of the monitor would have severely hindered the ability of the screen to be stowable into the armrest, at least without expanding the size of the armrest.  Space being at a premium on an airplane, the person of ordinary skill would have discounted expanding the size of the armrest, and concluded that it would have been unsatisfactory to place the mounting means at the rear of the monitor since this would destroy the intended function of the invention, which function includes that "the screen must be easily stored and retracted."  "If proposed modification would render the prior art invention being modified unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification."  (MPEP §2143.01 (V))  It would not have been obvious to mount the monitor of Reh at the rear thereof.

We can arrive at this conclusion from another direction.  With reference to Figure 2 of Reh, it is not clear how the joints 40 and 42 could be positioned at the rear of the monitor 38 and still be coupled to the track 44.  Even if this could somehow be achieved, positioning the joints 40 and 42 at the rear of the monitor 38 would increase the effective thickness of the monitor by at least the thickness of the joint, preventing the monitor to fit in the armrest slot shown in Figure 2.  But Reh teaches that "[b]ecause of safety requirements and customer convenience, the screen <u>must</u> be easily stored and retracted." (column 1, lines 17-19 with emphasis added) Accordingly, Reh **teaches away** from a modification in the fashion claimed.  The foregoing is evidence that claims 16 and 17 are non-obvious.  *Crocs, Inc. v. ITC,* 93 U.S.P.Q.2d 1777 (Fed. Cir. 2010), cited in Patent and Trademark Office Examination Guidelines Update: Developments in the Obviousness Inquiry after *KSR v. Teleflex*, Fed. Reg. 75:169 (Wednesday, September 1, 2010) at 53647.  *See also KSR Int'l Co. v. Teleflex Inc.,* 82 U.S.P.Q.2d at 1396; *In*

17

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

*re Hedges*, 228 U.S.P.Q. 685, 687 (Fed. Cir. 1986) (When the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious); *DyStar Textilfarben GmbH v. C.H. Patrick Co.,* 80 U.S.P.Q.2d 1641, 1645 (Fed. Cir. 2006).

Likewise, there is a teaching away from the mounting means of the '978 patent in Williamson. In particular, Williamson describes a "reflective **membrane** 30 [that] is **stretched taut** across the frames 10 in each direction by tie cords 31 which can be elasticated to apply tension to the membrane surface."  (column 4, lines 1-4 with emphasis added).  The Examiner has not pointed to a teaching or suggestion in Williamson to mount the socket joints 20 with a screw-threaded extension 28 of the ball element of the joint to the rear of Williamson's stretched taut "reflective membrane" 30 in the fashion claimed.  It appears that doing so might very well hamper or damage Williamson's stretched taut "reflective membrane" 30.  The foregoing **teaches away** from combining the references in the fashion claimed, and is further evidence that claims 16 and 17 are not obvious.

**Williamson is non-analogous art**

Courts have employed an "analogous art" test to determine obviousness:

> The "analogous art" test has long been part of the primary Graham analysis articulated by the United States Supreme Court. The analogous-art test requires that the United States Patent and Trademark Office, Board of Patent Appeals and Interferences show that a reference is either in the field of an applicant's endeavor or is reasonably pertinent to the problem with which the inventor was concerned in order to rely on that reference as a basis for rejection. References are selected as being reasonably pertinent to the problem based on the judgment of a person having ordinary skill in the art. *In Re Leonard R. Kahn*, 441 F.3d 977 (Fed. Cir. 2006)

Williamson is art that is non-analogous to the field of the '978 patent.  The former concerns itself with tripods having reflectors to reflect light for taking photographs, the latter with computer monitor systems.  A person of ordinary skill in the art of the '978 patent would not be expected to be apprised of a system from the field of photographic reflectors.

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

*Claims 1-3 and 6*

Claims 1-3 and 6 have been rejected by the Examiner under 35 U.S.C. §103(a) as being unpatentable over Williamson in view of U.S. Patent No. 5,867,210 to Rod (hereinafter "Rod"). Reconsideration thereof is requested in light of the following.

**Williamson is non-analogous art**

As discussed above, the patent owner believes Williamson is non-analogous art.

**Williamson lacks mounting means**

In making his obviousness rejection, the Examiner states that Williamson teaches the mounting means of claim 1. Assuming the same construction of mounting means as Judge Davis provided for claims 16 and 17, the structure of the mounting means includes the rear of the display. In contrast, as can be seen from Figure 2 of Williamson, the ball and socket joint 20 is disposed on the inside edge of the reflector frame 10, not at the rear. Thus, the only way Williamson could render obvious claim 1 is if the ball and socket assembly taught in Williamson is an equivalent to the mounting means of the '978 patent.

As we now explain, the mounting assembly taught in Williamson is not equivalent to the mounting means of claim 1.

First, as stated in the '978 patent, "[i]t will generally be desirable to minimize the spacing between edges of the displays whether vertically registered or horizontally registered." (col. 2, lines 5-7) As a result of mounting the displays at the rear, this objective can be achieved.

Second, as noted in section 2183 of the MPEP, the equivalence of the disclosed structure and the structure of the prior art can be demonstrated by a showing that:

(A) the prior art element performs the identical function specified in the claim in substantially the same way, and produces substantially the same results as the corresponding element disclosed in

19

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

the specification. Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 54 USPQ2d 1308 (Fed. Cir. 2000)

Judge Davis determined the function of the mounting means to be "mounting the displays to the arm assembly," and the structure to include the "rear of the display." As a result, the displays may be mounted "to minimize the spacing between edges of the displays." (col. 2, line 6)

In contrast, Williamson (see Figure 2) and Reh (see Figure 4) both teach disposing the mounting mechanism on the inside edge of the display so as to lie between the displays. As the Examiner will appreciate, with the mounting mechanism disposed between the displays, it is not possible to obtain substantially the same result of minimizing the spacing between displays. Since the structure of the prior art does not yield substantially the same results as that disclosed in the '978 specification, the equivalence of the disclosed structure and the structure of the prior art has *not* been demonstrated. Therefore, claim 1, and claims 2, 3 and 6 that depend therefrom, have not been rendered obvious.

**Williamson lacks ability to orient displays**

The Examiner states that Rod shows a pair of electronic displays (24, 26) which will inherently have operative angular orientations relative to horizontal. The Examiner goes on to state that Williamson has mounting means which enable adjusting the angular orientation relative to the arm assembly, and that it was known at the time of the invention to use multiple electronic displays in horizontal or vertical registered relationships.

However, even if we take the Examiner's assertions in the previous paragraph as fact, the prior art cited by the Examiner does not teach the ability "to orient each of the displays in its operative angular orientation when the arm assembly is in either one of its first and second orientations," as required by claim 1 of the '978 patent.

To see this, and in view of Figures 1 and 2 of Rod, let us assume that the operative angular orientation is landscape orientation. The top right configuration of Figure 4 of Williamson shows the bar 17 in a vertical position, and the reflector frames roughly in "landscape" orientation. Now rotating the bar 90 degrees counter-clockwise yields the

20

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

configuration of Figure 2, where the reflector frames are now in "portrait" orientation. To orient each of the frames in the operative landscape orientation would require that the frames in Figure 2 be rotated 90 degrees. But this is seen to be impractical for two reasons. First, the frames would collide with each other. And second, even if this we not an issue, the resultant configuration would leave the middle reflector and one end reflector obstructed, which would largely destroy the reflective function of the system. Thus, these prior art references do not teach the ability "to orient each of the displays in its operative angular orientation when the arm assembly is in either one of its first and second orientations," as required by claim 1 of the '978 patent. Therefore, claim 1, and claims 2, 3 and 6 that depend therefrom, have not been rendered obvious.

**Arm assembly of Williamson cannot rotate about a horizontal axis**

Claim 2 requires the arm assembly to be able to rotate about a generally horizontal axis. However, an examination of Figure 3 of Williamson, reveals that the bar 17 of Williamson cannot rotate about a horizontal axis. In particular, for the bar 17 to rotate about a horizontal axis, it is necessary for the cylindrical extension 21 to lie horizontal. However, the extension 21 cannot lie horizontal because the non-zero radius of the cylindrical extension 21 causes the extension 21 to collide with the perimeter of the socket of the joint 24 before the extension 21 reaches horizontal, as the following schematic illustrates



The Examiner therefore has not established that claim 2 is directed merely to "the predictable use of prior art elements according to their established functions." *KSR Int'l Co.* Claim 2 is not obvious in light of the cited prior art.

**Williamson does not teach a telescopic arm assembly**

21

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

The Examiner is reminded that in ascertaining the differences between the prior art and the claims at issue (the second factual inquiry of the seminal Supreme Court case *Graham v. John Deere*), one must view the claims as the "invention as a whole," as required by 35 U.S.C. §103.  (Cf. MPEP §2141.02 (I))  The Examiner must therefore do more than just show that all elements of a claim can be found in the prior art.  Otherwise, to the extent that all inventions are comprised of known constituents, everything is obvious.

With this in mind, it is not enough to state that telescopic rods were known at the time of the invention and that therefore claim 6 is obvious.  A telescoping arm assembly for supporting displays is an inventive solution to the problem of minimizing the spacing between displays where each display can be rotated about an axis perpendicular thereto.  The fact that Williamson uses a telescoping rod for an altogether different purpose (raising and lowering reflector frames) does not negate this last statement.  Hence, claim 6 is not obvious.

*Claim 4*

Claim 4 has been rejected by the Examiner under 35 U.S.C. §103(a) as being unpatentable over Williamson in view of Rod and further in view of U.S. Patent No. 5,177,616 to Riday (hereinafter "Riday").  Reconsideration thereof is requested in light of the following.

Independent arguments have been provided above in support of the non-obviousness of claims 1 and 2.  For at least the same reasons, claim 4, which depends directly or indirectly from claims 1 and 2, is not obvious.

*Claims 7 and 8*

Claims 7 and 8 have been rejected by the Examiner under 35 U.S.C. §103(a) as being unpatentable over Williamson in view of Rod and further in view of U.S. Patent No. 5,505,424 to Niemann (hereinafter "Niemann").  Reconsideration thereof is requested in light of the following.

Arguments have been provided above in support of the non-obviousness of claim 1. Since claims 7 and 8 depend directly or indirectly from claim 1, there arguments also apply to claims 7 and 8.

22

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

## <u>Status of Claims and Support for Claim Changes</u>

Claims 9-12, 14 and 15 are not subject to reexamination.  Claims 1-8, 13, 16 and 17, and new claims 18-38 are pending.  Support for the new claims can be found in the Abstract, Summary of the Invention, Description of the Drawings, Description of Preferred Embodiments, Claims and drawings. Examples of specific portions of the patent providing support for the new claims follow.

<u>Claims 18, 28</u>

*limitation (i)*: Figure 9 shows that the mounting means mounts a rear portion of one display 16; col. 3, lines 65-66 ("…a plastic socket 60 supported from the rear of the display 16.")  Figure 20 shows that the mounting means mounts a rear portion of one display 152.  Note, too, that the Court included the rear of the display in both its definitions of "mounting means."

*limitation (ii)*: the display 16 in Figure 4 is in a first angular position and the same display 16 has a second angular position relative to the arm assembly in Figure 6, the second angular position being obtained from the first angular position by rotating the one display 90 degrees with respect to the arm assembly about a rotation axis (cf. rotation axis 70) substantially perpendicular to the face of the display; col. 3, lines 58-60; col. 4, lines 28-30; col. 4, lines 64-67 ("Rotation of …the display 16 relative to the arm 18 is restricted to 90 degrees between two extreme angular positions…")

*limitation (iii)*: Col. 2, lines 5-18

<u>Claims 19, 29</u>

Col. 1, line 18 ("desk"); col. 3, lines 21-22 ("…a base 12 configured to stand on a horizontal surface…")

<u>Claims 20, 30</u>

Col. 1, line 18 ("desk"); col. 3, lines 21-22 ("…a base 12 configured to stand on a horizontal surface…"); Figures 1-6, and12-18 show a base member that includes a substantially flat, horizontal member for standing on a horizontal desk.

23

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

<u>Claims 21, 31</u>

Abstract ("In a simple implementation, the arm assembly is a rigid arm…")

<u>Claims 22, 32</u>

The arm assembly in Figures 1-4 and Figure 18 projects horizontally from the support means; col. 3, line 9 ("…the arm horizontal…"). Note, too, that the Court defined an arm assembly as a structure having one or more constituent parts connected to and projecting from the support means.

<u>Claims 23, 33</u>

The arm assembly in Figures 7 and 19 consists of directly connected components.

<u>Claims 24, 34</u>

Col. 2, lines 5-18

<u>Claims 25, 35</u>

Col. 10, lines 41-45

<u>Claims 26, 36</u>

Col. 2, lines 5-18

<u>Claims 27, 37</u>

*limitation (i)*: Figure 9 shows that the mounting means mounts a rear portion of one display 16; col. 3, lines 65-66 ("…a plastic socket 60 supported from the rear of the display 16.")  Figure 20 shows that the mounting means mounts a rear portion of one display 152.  Note, too, that the Court included the rear of the display in both its definitions of "mounting means."

*limitation (ii)*: the display 16 in Figure 4 is in a first angular position and the same display 16 has a second angular position relative to the arm assembly in Figure 6, the second angular position being obtained from the first angular position by rotating the one display 90 degrees with respect to the arm assembly about a rotation axis (cf. rotation axis 70) substantially perpendicular to the

24

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

face of the display; col. 3, lines 58-60; col. 4, lines 28-30; col. 4, lines 64-67 ("Rotation of …the display 16 relative to the arm 18 is restricted to 90 degrees between two extreme angular positions…")

*limitation (iii)*: Col. 2, lines 5-18

*limitation (iv)*: Col. 1, line 18 ("desk"); col. 3, lines 21-22 ("…a base 12 configured to stand on a horizontal surface…"); Figures 1-6, and12-18 show a base member that includes a substantially flat, horizontal member for standing on a horizontal desk.

*limitation (v)*: The arm assembly in Figures 7 and 19 consists of directly connected components.

Claim 38
*limitation (i)*: Figure 9 shows that the mounting means mounts a rear portion of one display 16; col. 3, lines 65-66 ("…a plastic socket 60 supported from the rear of the display 16.")  Figure 20 shows that the mounting means mounts a rear portion of one display 152.  Note, too, that the Court included the rear of the display in both its definitions of "mounting means."

*limitation (ii)*: Col. 2, lines 5-18

*limitation (iii)*: Col. 1, line 18 ("desk"); col. 3, lines 21-22 ("…a base 12 configured to stand on a horizontal surface…")

*limitation (iv)*: The arm assembly in Figures 7 and 19 consists of directly connected components.

**Patent Owner's Statement of Interview Further to 37 CFR 1.560(b)**

An interview occurred on September 24, 2010 between the patent owner, Jerry Moscovitch, and Examiner William C. Doerrler.  The patent owner requested clarification of the office action dated 09/01/2010.  In particular, the Examiner was asked which plate was being referred to in his statement that "the plate extends down below the guide rail 30—see lines 42-44

25

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

of column 2 [of Reh]." The Examiner responded that for the base member he was referring to base rail 44 and the unmentioned unmoving portion that supports base rail 44.

The Examiner was also asked which element he claimed to be the support means. The Examiner responded that the support is seen as slide rails 48 and 52 that support the arm (joint 40).

No agreement with respect to the claims was sought at this time, nor was any granted.

## Notification of Existence of Prior or Concurrent Proceedings and Decisions Thereon

The '978 patent being reexamined is a reissue patent of U.S. Patent No. 5,687,939, filed on April 26, 1996 and issued on November 18, 1997.

The '978 patent was the subject of a lawsuit officiated by Judge Leonard Davis. The lawsuit was styled Case No. 206 CV 272 in the U.S. District Court—Eastern District of Texas, Marshall Division. The Plaintiffs were Mass Engineered Design Inc. and Jerry Moscovitch. The Defendants were Ergotron, Inc., Dell, Inc., CDW Corporation and Tech Data Corporation. After a six day jury trial and a one day bench trial on equitable issues, the jury returned a verdict that the '978 patent was valid, infringed by all Defendants, and that Ergotron and Dell infringed willfully. The jury awarded Mass $3,000,000 in damages. An injunction was issued against Ergotron, Inc., Dell, Inc., CDW Corporation and Tech Data Corporation. The verdict results were entered as final judgment by Judge Davis on May 7, 2009.

The '978 patent is the subject of a current lawsuit, Case No. 209 CV 358. The Complaint was filed on November 12, 2009 in the U.S. District Court—Eastern District of Texas. The Plaintiffs are Mass Engineered Design Inc. and Jerry Moscovitch. The Defendants listed on the Complaint are 9X Media, Inc., Planar Systems, Inc., Atdec PTY Ltd; Ergotech Group, Inc.; Human Scale Corporation; Innovative Office Products, Inc.; Naples Technology, Inc.; Workrite Ergonomics, Inc.; Knoll, Inc.; Spaceco Business Solutions, Inc.; PFG Ventures, LP; Custom Products and Services, Inc.;  E-Filliate, Inc.; Progressive Marketing Products, Inc.; AFC Industries, Inc.; ESI Ergonomic Solutions, L.L.C.; Media Mounts, Inc.; Eizo Nanao

Copied from 90009701 on 01/18/2011

Control Nos.: 90/009,701 and 90/010,883

Technologies, Inc.; Herman Miller, Inc.; Wall Street trading Desks, Inc.; Sallas Industrial Company, Ltd.; Grand Stands, Inc.; Ergonomic Accessories International Corporation; Targus, Inc.; K and A Manufacturing, Inc.; Ergotect Corporation; Vartech Systems, Inc.; Woodtronics, Inc. and SBFI North America.

## CONCLUSION

In view of the above amendment and remarks, the patent owner requests that the outstanding rejections be withdrawn, and that the new claims be given favorable consideration.

Date: October 28, 2010

Respectfully submitted,

Jerry Moscovitch
Patent Owner and Inventor

27

Copied from 90009701 on 01/18/2011

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/009,701 | 03/04/2010 | RE36978 | | 6956 |

ε, 90\010,883

| | | EXAMINER |
|---|---|---|

54984        7590        01/24/2011

MASS ENGINEERED DESIGN INC.
474 WELLINGTON STREET WEST
TORONTO, ON   M5V-1E3
CANADA

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 01/24/2011

Please find below and/or attached an Office communication concerning this application or proceeding.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,883 | 03/19/2010 | RE36,978 | 25069-51 | 8908 |

ξ 90/009,701

54984      7590      01/24/2011

| | EXAMINER |
|---|---|

MASS ENGINEERED DESIGN INC.
474 WELLINGTON STREET WEST
TORONTO, ON   M5V-1E3
CANADA

| ART UNIT | PAPER NUMBER |
|---|---|

DATE MAILED: 01/24/2011

Please find below and/or attached an Office communication concerning this application or proceeding.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

NEXSEN PRUET, LLC

P.O. BOX 10648

GREENVILLE, SC 29603

Date:

## EX PARTE REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. : 90010883   $\frac{2}{3}, 90 \mid 0 09 \mid 70 1$

PATENT NO. : RE36978

ART UNIT : 3993

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Design IP, P.C.
5100 W. Tilghman Street
Suite 205
Allentown, PA 18104

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/009,701 and 90/010,833*.

PATENT NO. *RE36978*..

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| ***Notice of Intent to Issue Ex Parte Reexamination Certificate*** | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/009,701  40/010,883 | RE36978 ET AL. |
| | **Examiner** | **Art Unit** | |
| | William C. Doerrler | 3993 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --**

1. ☒ Prosecution on the merits is (or remains) closed in this *ex parte* reexamination proceeding. This proceeding is subject to reopening at the initiative of the Office or upon petition. *Cf.* 37 CFR 1.313(a). A Certificate will be issued in view of
   (a) ☒ Patent owner's communication(s) filed: <u>29 October 2010</u>.
   (b) ☐ Patent owner's late response filed: _____.
   (c) ☐ Patent owner's failure to file an appropriate response to the Office action mailed: _____.
   (d) ☐ Patent owner's failure to timely file an Appeal Brief (37 CFR 41.31).
   (e) ☐ Other: _____.

   Status of *Ex Parte* Reexamination:
   (f) Change in the Specification: ☐ Yes ☒ No
   (g) Change in the Drawing(s): ☐ Yes ☒ No
   (h) Status of the Claim(s):
      (1) Patent claim(s) confirmed: <u>1-8, 13, 16 and 17</u>.
      (2) Patent claim(s) amended (including dependent on amended claim(s)): _____
      (3) Patent claim(s) cancelled: _____.
      (4) Newly presented claim(s) patentable: <u>18-38</u>.
      (5) Newly presented cancelled claims: _____.

      (6) Patent claim(s) ☐ previously ☐ currently disclaimed: _____

      (7) Patent claim(s) not subject to reexamination: <u>9-12, 14 and 15</u>.

2. ☒ Note the attached statement of reasons for patentability and/or confirmation. Any comments considered necessary by patent owner regarding reasons for patentability and/or confirmation must be submitted promptly to avoid processing delays. Such submission(s) should be labeled: "Comments On Statement of Reasons for Patentability and/or Confirmation."

3. ☐ Note attached NOTICE OF REFERENCES CITED (PTO-892).

4. ☒ Note attached LIST OF REFERENCES CITED (PTO/SB/08 or PTO/SB/08 substitute.).

5. ☐ The drawing correction request filed on _____ is: ☐ approved ☐ disapproved.

6. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
   a)☐ All  b)☐ Some*  c)☐ None   of the certified copies have
      ☐ been received.
      ☐ not been received.
      ☐ been filed in Application No. _____.
      ☐ been filed in reexamination Control No. _____.
      ☐ been received by the International Bureau in PCT Application No. _____.

   * Certified copies not received: _____.

7. ☐ Note attached Examiner's Amendment.

8. ☐ Note attached Interview Summary (PTO-474).

9. ☐ Other: _____.

cc: Requester (if third party requester)

Application/Control Number: 90/009,701 and
90/010,883                                                          Page 2
Art Unit: 3993

## STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION

The following is an examiner's statement of reasons for patentability and/or

confirmation of the claims found patentable in this reexamination proceeding: The cited

art fails to show or fairly teach the invention claimed in Re36,978. Re36,978 has three

independent claims, claims 1,16 and 17. Claim 1 was rejected over Williamson in view

of Rod in the September 1, 2010 Office Action. Williamson is seen as showing a base,

an arm assembly supporting items on each end and support means for supporting the

arm assembly from the base, with the support means capable of either a horizontal or

vertical orientation. Rod teaches the use of multiple electronic displays, supported from

the top of the displays, which are shown with the screens at an angle to each other.

Claim 1 further requires, "mounting means for mounting the displays to the arm

assembly, the mounting means comprising means for adjusting the angular orientation

of each of the displays in its operative angular orientation when the arm assembly is in

either one of its first and second orientations." While Williamson shows mounting

means, the language of the claim is seen as means plus function language that invokes

the use of the sixth paragraph of 35 USC 112. Williams shows ball and socket

connections similar to those shown in the '978 patent, but uses threads 28 on the

extension of the ball and socket so the frames of Williamson can be removed and

reattached using a different side of the frame. This is seen as structurally different than

the socket which is supported on the rear side of the electronic display, detailed

between line 54 of column 3 and line 67 of column 4 and between line 65 of column 6

and line 42 of column 7 in the '978 patent. The connection of Williamson is designed to

Application/Control Number: 90/009,701 and
90/010,883                                                                          Page 3
Art Unit: 3993

be easily removed for attachment to a different side, while the connection of the '978

patent is designed to be essentially permanent between the display and the arm, while

permitting different configurations.  None of the cited references can overcome this

deficiency.  The structural difference between the mounting means of Williamson and

the mounting means disclosed in the '978 patent and claimed in means plus function

form is the reason no rejection of claims 16 and 17 (and dependent claims) relying on

Williamson were made.

        Claims 16 and 17 were rejected in the September 1 Office Action using Reh.

Both claims call for an "arm assembly".  The separate supports shown by Reh can be

seen as an assembly comprising a separate arm for each display.  However, both

claims invoke the 6th paragraph of 35 USC 112 with "support means", "for supporting

the arm assembly".  While the arm assembly can be seen to have two arms, the support

means in the specification supports one arm using structure (seen to include upright 20,

circular recess 34, washer 36 and bolt 38 shown in figure 7 or upright 158, socket 206,

plug 208 and bolt 210 shown in figure 19) that is structurally different from the structure

of Reh (track 44 and slide plates 48 and 52).  Modifying the support of Reh, with a

structure such as one shown in the '978 patent (although none of the cited references

teach such a structure) is seen to destroy the original intent of Reh, to provide

independently movable, stowable video displays.  None of the cited references are seen

to show a display system with the mounting and support means described in the

specification and claimed in means plus function language.  Robak, Kanda and Riday

are all seen as equal to Reh in this regard as all show multiple displays which are

Application/Control Number: 90/009,701 and
90/010,883                                                          Page 4
Art Unit: 3993

independently retrievable from a storage compartment on separate arms and thus lack

the support means of the '978 patent.  To add the support means shown in the '978

patent to any of these references is seen to destroy this stowability objective of these

references.  These references are not seen as applicable to claim 1, as the stowed

position is not seen as "an operative angular orientation" as claimed, because the

displays are not intended to be used and would not be visible in the lower position.

New claims 18-38 are seen as allowable as they depend from either claim 16 or

17, present no new matter and meet the clarity requirements of 35 USC 112 second

paragraph.


The Information Disclosure Statements (IDSs) filed on 10/29/2010, 11/12/2010,

11/30/2010 and 1/5/2011 have been considered by the examiner. Documents which fail

to constitute patents or printed publications have been lined through on the Form

PTO/SB/08 (or PTO-1449) so as not to be published on the reexamination certificate,

but have been considered by the examiner to the extent noted below.

Consideration by the examiner of the information submitted in an IDS means that

the examiner will consider the documents in the same manner as other documents in

Office search files are considered by the examiner while conducting a search of the

prior art in a proper field of search. Information which complies with information

disclosure requirements of 37 C.F.R. 1.98 but which is in a non-English language will be

considered in view of the concise explanation submitted (see MPEP 609.04(a),

subsection III.) and insofar as it is understood on its face, e.g., drawings, chemical

Application/Control Number: 90/009,701 and
90/010,883                                                    Page 5
Art Unit: 3993

formulas, in the same manner that non-English language information in Office search

files is considered by examiners in conducting searches. The initials of the examiner

placed adjacent to the citations on the form PTO/SB/08A and 08B or its equivalent

mean that the information has been considered by the examiner to the extent noted

above.  See MPEP 609.05(b).


Any comments considered necessary by PATENT OWNER regarding the above

statement must be submitted promptly to avoid processing delays.  Such submission by

the patent owner should be labeled: "Comments on Statement of Reasons for

Patentability and/or Confirmation" and will be placed in the reexamination file.


/William C. Doerrler/
CRU 3993


CONF:  /JMC/