**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| HUMANSCALE CORPORATION | ) ) ) | 1:13-cv-0535-CMH/IDD |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MASS ENGINEERED DESIGN, INC and JERRY MOSCOVITCH | ) ) ) ) | |
| Defendants. | ) ) | |

**HUMANSCALE'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF UNDISPUTED FACTS .................................................................... 2
    A. The Asserted Patent Claims. ............................................................................... 2
    B. The Asserted Claims Require A "Base." ............................................................ 3
    C. Mass's Display Systems. .................................................................................... 4
    D. Humanscale's Accused Products. ....................................................................... 5

III. LEGAL ARGUMENT ..................................................................................................... 9
    A. Summary Judgment Standard. ............................................................................ 9
    B. Mass's Infringement Counterclaims Fail as a Matter of Law ........................... 11
    C. The Expert Report of Dr. J.E. Akin Does Not Save Mass from Summary
        Judgment. .......................................................................................................... 14

IV. Conclusion ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
    696 F. Supp. 2d 582 (E.D. Va. 2010) ..............................................................................9, 10

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
    2013 U.S. Dist. LEXIS 9257 (E.D. Va. Jan. 22, 2013) ............................................................11

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
    216 F.3d 1042 (Fed. Cir. 2000)..........................................................................14, 15, 16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................10

*Fitness Gaming Corp. v. Icon Health & Fitness, Inc.*,
    2011 U.S. Dist. LEXIS 90605 (E.D. Va. 2011).............................................................9

*Forest Labs., Inc. v. Abbott Labs.*,
    239 F.3d 1305 (Fed. Cir. 2001)................................................................................11

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)..................................................................................10

*Hash v. Johnson*,
    845 F. Supp. 2d 711 (E.D. Va. 2012) .......................................................................11

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009)................................................................................14

*Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*,
    2011 U.S. Dist. LEXIS 136621 (N.D. Cal. Nov. 29, 2011).......................................14

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995).....................................................................................11

*TechSearch L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002).................................................................................14

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001).................................................................................14

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989).................................................................................10

I. **INTRODUCTION**

This patent infringement case is ripe for summary judgment. Humanscale moves on one very narrow issue which is case dispositive of every issue in the case. Every claim of Mass's patents-in-suit requires a "base." The Court completed the first of the two-step infringement analysis, construing "base" and limiting it to (i) the lowermost portion of the system (ii) *for resting on a work surface* (iii) and *that supports the arm assembly* or support arm structure above the work surface. In contrast to the claimed desktop stands, Humanscale's monitor arm systems have no such base, which is self-evident by simply examining their designs. There are no genuine issues of material fact about Humanscale's monitor arm systems, or their lack of a required base.

Specifically, unlike the claimed desktop display stands that rely on a base to rest on and support the stand on top of a work surface, Humanscale's monitor arm systems are secured to the desk by mounts below the work surface. The structure of Humanscale's products cannot be seriously disputed by Mass.




*'978 Patent*     *Humanscale's M4 Monitor Arm*

No Humanscale monitor arm products rest on a work surface. Instead, Humanscale's products each secure the monitor arm system to the desk from **underneath** the desktop surface, not **on** the desktop surface. Thus, the lowermost portions of the monitor arm systems are not *"resting on a work surface,"* they are below it. Indeed, they must be **secured** underneath the work surface to

support the arm assembly. These self-evident facts cannot be challenged. As a result, the Court should grant summary judgment of noninfringement, as result dictated by claim construction.[1]

## II.  STATEMENT OF UNDISPUTED FACTS

### A.  The Asserted Patent Claims.

1. Mass is accusing Humanscale of infringing U.S. Patent No. RE 36,978 entitled "Dual Display System" (the "'978 patent"). *See* Ex. 1. Specifically, Mass alleges that Humanscale's M8, M7, M4, and Para/Flex products infringe Claims 16-37 of the '978 patent. It alleges that Humanscale's M/Flex product infringes Claims 16-24 and 27-37 of the '978 patent. The foregoing products are referred to herein as the "Accused Products." *See* Ex. 2 (excerpts from Mass Engineered Design, Inc. and Jerry Moscovitch's Initial Disclosures of Asserted Claims and Infringement Contentions).

2. Mass also alleges that Humanscale's M7 product infringes Claims 5-13 and 20-30 of U.S. Patent No. RE 42,091 entitled "Computer Display Screen System and Adjustable Screen Mount" (the "'091 patent"). *See id.*; Ex. 3. It alleges that Humanscale's M/Flex product infringes Claims 5-30 of the '091 patent. *See* Ex. 2.

3. Mass also alleges that Humanscale's M7, M4 and M/Flex products infringe Claims 1-3 and 5-18 of U.S. Patent No. 8,462,103 entitled "Computer Display Screen System and Adjustable Screen Mount, and Swinging Screens Therefor" (the "'103 patent"). *See id.*; Ex. 4; Ex. 2. It alleges that Humanscale's Para/Flex product infringes Claims 1, 3, 5-8, and 10-18 of the '103 patent. *See* Ex. 2.

---

[1] Humanscale made numerous attempts to meet and confer with Mass on this motion. Mass stated they were not available to meet and confer until after the deadline for filing summary judgment motions expired.

4. Mass alleges that Humanscale's Para/Flex product infringes Claims 1-12, 14, and 16-18 of U.S. Patent No. 8,102,331 entitled "Horizontal Three Screen LCD Display System" (the "'331 patent"). *See id.*; Ex. 5.

### B. The Asserted Claims Require A "Base."

5. All of the asserted claims require a "base," "base structure," or "base member." *See* Ex. 2; Dkt. No. 81 at 2-3 (Defendants' Amended Opening Claim Construction Brief).

6. The parties agreed that the terms "base," "base structure," and "base member" (collectively "base") should all have the same construction. Dkt. No. 81 at 6.

7. Each of the patents-in-suit show display systems having a base:



'978 Patent      '091 Patent      '331 Patent      '103 Patent

8. During claim construction, Mass argued that the Court should construe "base" as "the lowermost portion of the system that engages a surface and that supports the arm assembly (978, 103), arms (091) or support arm structure (331) above the surface." *Id.* at 6.

9. Humanscale asked the Court to construe "base" as "the lowermost portion of the system for resting on a work surface and that supports the arm assembly (978, 103), arms (091) or support arm structure (331) above the work surface." *Id.*

10. Thus, the parties' dispute with respect to "base" came down to whether a base "engages" or "rests" on a "surface" or "work surface." *See id.* Both parties agreed that the

3

"base" must be "the lowermost portion of the system" "that supports the arm assembly above the [] surface." *Id.*

11.     The Court adopted Humanscale's proposed construction and construed "base" to mean "the lowermost portion of the system for resting on a work face (sic) and that supports the arm assembly or support arm structure above the work surface."[2] Ex. 6 at p. 3, ll. 8-11 (Dkt. No. 97, Transcript of 12/6/13 Claim Construction Hearing).

12.     In doing so, the Court rejected Mass's argument that the base "engages," as opposed to "rests on," the work surface. *See id*.

   **C.     Mass's Display Systems.**

13.     Mass sells desktop Multi-Display Systems that it asserts are covered by at least the '978 patent. Ex. 7 at 8 (Mass' Answer to Interrogatory No. 4).

14.     Mass advertises its Multi-Display Systems on its website, including its VU2H-215 system shown below. Its Multi-Display Systems include displays.



*See* Ex. 16 (taken from http://www.massmultiples.com/products/vu215/vu2h215.htm).

---

[2]     It is believed the Court recited in its oral ruling a work "surface," and not a work "face."

4

15. Mass's desktop Multi-Display Systems include a base that is designed to be placed and rest on a horizontal surface. *Id.; see also* Ex. 17 (taken from http://www.massmultiples.com/downloads/ PDF_files/ML17-04-AD.pdf ("Place the structure and base tray on a level surface.")).

### D. Humanscale's Accused Products.

16. As set forth above, Mass is accusing each of Humanscale's M8, M7, M4, Para/Flex, and M/Flex monitor arms of infringing the '978 patent and at least one of the other patents-in-suit.

17. These monitor arms are either ordered in "common configurations," or can be ordered by "building your own," where a user determines how to configure the monitor arm. *See, e.g.,* Ex. 8 at ¶ 2 (Declaration of James H. Owens); Ex. 9 at HUM048714-48718 (Humanscale Pricing and Specification Guide). The common configurations use clamp mounts or bolt-thru mounts. *Id.*

18. Rather than use a base that rests on top of the work surface (like Mass's Multi-Display Systems), the accused Humanscale M8, M7, M4, Para/Flex, and M/Flex monitor arms use these clamp mounts or bolt-through mounts to secure the monitor arm system to a desk. *See* Ex. 8 at ¶ 3; Ex. 9 at HUM048714-48736.

19. A clamp mount uses a bracket and clamp to secure the monitor arm to the desk. The clamp (outlined in red below), which is located ***below*** the desktop, is the lowermost portion of the monitor arm system and secures the monitor arm to the desk. Ex. 8 at ¶ 4. If the clamp is not attached to the bracket and tightened to the bottom surface of the desk, the monitor arm will fall over due to its inability to support the arm and displays that it is designed to hold. *Id*. The image below shows the clamp mount on Humanscale's M8 product.



*See id.*; Ex. 10 at 2 (Humanscale's M8 Installation Instructions).

20. A bolt-through mount uses a bolt and plate to secure the monitor arm to the desk. The bolt extends from underneath the desk through a hole in the desktop, and the plate is located underneath the desktop. The bolt is the lowermost portion of the monitor arm system and in conjunction with the plate secures the arm to the desk from the underside of the desktop. Ex. 8 at ¶ 5. If the bolt is not secured, the monitor arm system will fall over due to its inability to support the arms and attached displays. *Id.* The image below shows the bolt-through mount on the M8.



*See id.*; Ex. 10 at 2.

21. Humanscale's M8 product is available with a clamp mount or a bolt-through mount. *See* Ex. 8 at ¶ 6; Ex. 9 at HUM048719-48723. The images below show a rear view of a M8 with crossbar and clamp mount and a side view of the clamp mount on the M8.[3]



*See* Ex. 8 at ¶ 6.

22. Humanscale's M7 product is available with a clamp mount or a bolt-though mount. *See id*. at ¶ 7; Ex. 9 at HUM048724-48733. The images below show a M7 with a clamp mount and illustrations of the clamp mount and bolt-through mount on the M7.



---

[3] Although some of the figures show Humanscale's display stands with displays mounted to them, the Accused Products comprise only the display stands.

7

*See* Ex. 8 at ¶ 7; Ex. 11 at 2 (Humanscale's M7 Installation Instructions).

23. Humanscale's M4 product is available with a clamp mount or a bolt-though mount. *See* Ex. 8 at ¶ 8; Ex. 9 at HUM048724-48733. The images below show the M4 with a clamp mount, and illustrations of the clamp mount and bolt-through mount on the M4.



*See* Ex. 8 at ¶ 8; Ex. 12 at 2 (Humanscale's M4 Installation Instructions).

24. Humanscale's M/Flex product is also available with a clamp mount or a bolt-through mount. *See* Ex. 8 at ¶ 9; Ex. 9 at HUM048714-48718. The images below show an M/Flex with a clamp mount, a side view of the clamp mount, and an illustration of the bolt-through mount.



*See* Ex. 8 at ¶ 9; Ex. 13 at 2 (Humanscale's M/Flex Installation Instructions).

8

25. Finally, Humanscale's Para/Flex is also available with a clamp mount or bolt-through mount. *See* Ex. 8 at ¶ 10; Ex. 9 at HUM048734-48736. The image below shows a Para/Flex with clamp mounts.



*See* Ex. 8 at ¶ 10.

26. As shown above, for each of the Accused Products, the lowermost portion of the monitor arm system that secures the monitor arm to the desk is (i) ***located below the desk,*** and (ii) ***secured to the underside of the desk***. In no Accused Product is the lowermost portion of the display stand ***resting on the desk surface***. *Id*. at ¶ 11.

## III. LEGAL ARGUMENT

### A. Summary Judgment Standard.

"A party is entitled to summary judgment when the evidence is such that no reasonable jury could return a verdict in favor of the non-moving party." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 696 F. Supp. 2d 582, 586 (E.D. Va. 2010) (citation omitted). Humanscale's burden on summary judgment is discharged "by simply pointing out 'that there is an absence of evidence to support [Mass's] case.'" *Fitness Gaming Corp. v. Icon Health & Fitness, Inc.*, 2011

U.S. Dist. LEXIS 90605, *6 (E.D. Va. 2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

Summary judgment is proper if Mass cannot "make a showing sufficient to establish the existence of an element essential to [Mass's] case, and on which [Mass] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Summary judgment on the issue of infringement is proper when no reasonable jury could find that ***every limitation*** recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'"[4] *Geoquip*, 696 F. Supp. 2d at 587 (granting summary judgment of noninfringement on all asserted claims because the accused devices did not include every element required by the independent claims) (quoting *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)) (emphasis in original). Where a dependent claim is allegedly infringed, the Court must find all of the elements and limitations in both the dependent claim and the independent claim on which it relies have been infringed. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

Where "the parties do not dispute any relevant facts regarding the accused product . . ., the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997). "More than an opposing narrative is required to defeat a motion for summary judgment because '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

---

[4] Mass's claimed only that the "base" element can be found ***literally*** in Humanscale's Accused Products, and has not asserted Doctrine of Equivalents for that element. *See, e.g.*, Ex. 2; Ex. 14 (M7-978 Chart from Expert Report of J.E. Akin, dated November 27, 2013). Thus, the question is whether the Accused Products literally contain a base.

facts for purposes of ruling on a motion for summary judgment.'" *Hash v. Johnson*, 845 F. Supp. 2d 711, 723 (E.D. Va. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 280 (2007)). Rather, "[t]o withstand a summary judgment motion, the non-moving party must produce **competent** evidence sufficient to reveal the existence of a genuine issue of material fact for trial." *Id*. (citation omitted) (emphasis added).

### B. Mass's Infringement Counterclaims Fail as a Matter of Law.

To determine whether infringement exists, the court applies a two-step analysis. Once the claims have been construed to determine their scope in the first step, they must then be compared to the accused device in the second step. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995). A patentee claiming infringement must present proof that the accused products meet each and every claim limitation. *Forest Labs., Inc. v. Abbott Labs*., 239 F.3d 1305, 1310 (Fed. Cir. 2001).

As explained in more detail below, and in the excerpts from the expert report of Dr. Arthur Erdman, dated December 20, 2013 (Ex. 15 at 11-29 and 34-36), Mass's infringement claims fail as a matter of law because **none** of the Accused Products literally have a "base" as construed by the Court. As a result, the Court should enter judgment of noninfringement in favor of Humanscale and against Mass on Counts I-IV of Mass's counterclaims.[5]

---

[5] Humanscale has additional claims and counter-counterclaims seeking declarations that the patents-in-suit are invalid and/or unenforceable. *See* Dkt. Nos. 1, 78. If the Court grants summary judgment of noninfringement, Humanscale will dismiss these remaining claims without prejudice. This Court recently dismissed validity claims without prejudice under similar circumstances. *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc*., 2013 U.S. Dist. LEXIS 9257, *2 (E.D. Va. Jan. 22, 2013) (holding that it "would be an unnecessary use of limited judicial resources to proceed with the invalidity issues" after dismissing the infringement claims on summary judgment).

The Court's construction of "base" includes three elements:

1. "the lowermost portion of the system

2. for resting on a work surface

3. and that supports the arm assembly or support arm structure above the work surface."

For the reasons explained below, the Accused Products do not have these elements.

### 1. The Clamp or Bolt Are the Lowermost Portion of the Accused Products.

The "lowermost" portion of the Accused Products is either the clamp (in the clamp mount versions) or the bolt (in the bolt-through mount versions).[6] These mounts in the Humanscale Accused Products secure to the underside of the desk, either by clamping or bolting:

 

### 2. The Lowermost Portion of the Accused Products Does Not "Rest On" a Work Surface.

The Court's construction of "base" requires that the lowermost portion of the system "rest on" the work surface. However, as explained above, the lowermost portion of

---

[6] Similarly, the clamp of the low profile mount, the grommets of the grommet mount, and the screws of the direct mount are the lowermost portion of the monitor arm systems in versions incorporating those mounting options. *See* Ex. 9.

12

Humanscale's monitor arm system, the clamp or bolt, does not rest on a work surface. They do not contact the work surface at all. Instead, they are each *secured to the underside of the desk*. Moreover, although a portion of the monitor arm system touches the work surface (i.e. the top surface of the desk), it does not rest on the work surface but is instead *secured to* the work surface from the underside of the desk by the clamp or bolt.

### 3. The Clamp and Bolt Underneath the Desk Support the Arm Assembly in the Accused Products.

The third concept included within the Court's construction of "base" is the requirement that the portion of the display stand that rests on the work surface "supports the arm assembly." In the Accused Products, it is the mounting hardware underneath the desk that, in conjunction with the desk itself, supports the monitor arm system. The portion of the monitor arm system that contacts the top surface of the desk (i.e. the work surface) cannot support the monitor arm above the work surface. While it may be self-evident from the diagrams and photos, use of the Accused Products themselves undeniably confirm that point. For example, if the clamp or bolt is not secured to the underside of the desk, the monitor arm system will simply fall over. This is because the support comes from underneath the desk, not from a portion of the system "resting" on the desk. The Accused Products therefore lack the "base" claim limitation.

In sum, the Accused Products do not have the three necessary elements of the term "base" as it has been properly construed by the Court. Consequently, Mass cannot meet its burden of proof and Humanscale is entitled to summary judgment.

### C. The Expert Report of Dr. J.E. Akin Does Not Save Mass from Summary Judgment.

Mass may rely on the report of its technical expert, Dr. J.E. Akin, in an attempt to avoid summary judgment. To satisfy the summary judgment standard, the Akin report "must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the non-movant." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc*., 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citing *Arthur A. Collins, Inc. v. N. Telecom Ltd*., 216 F.3d 1042, 1047-48 (Fed. Cir. 2000)); *see also Karl Storz Endoscopy-America, Inc. v. Stryker Corp*., 2011 U.S. Dist. LEXIS 136621, *6 (N.D. Cal. Nov. 29, 2011) ("If expert testimony is provided by the patentee in an attempt to defeat summary judgment, the testimony proffered must be supported by sufficient facts and be reasonable in light of the undisputed factual record.") (citing *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993)).

Conclusory expert declarations are insufficient to create a genuine dispute of material fact. *See TechSearch L.L.C. v. Intel Corp*., 286 F.3d 1360, 1372-75 (Fed. Cir. 2002) ("wholly conclusory" declaration of expert witness is insufficient to raise a genuine issue of material fact); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("Broad conclusory statements offered by [the patent holder's] experts are not evidence and are not sufficient to establish a genuine issue of material fact."); *Arthur A. Collins, Inc. v. North. Telecom Ltd.*, 216 F.3d 1042, 1047 (Fed. Cir. 2000) ("[A] party may not avoid summary judgment simply by offering an opinion of an expert that states, in effect, that the critical claim limitation is found in the accused device.").

Dr. Akin's expert report does not contain the factual analysis the Federal Circuit requires, and thus cannot create a genuine issue of material fact. As mentioned above, the Court construed "base" as:

> **"the lowermost portion of the system**
>
> **for resting on a work surface**
>
> **and that supports the arm assembly or support arm structure above the work surface."**

The sum total of Dr. Akin's opinion with respect to "base" is as follows:

> To one in ordinary skill in the art, the Humanscale M7 meets Humanscale's construction of a base member. First, **base member 1[7] is the lower most [sic] portion of the system**. Second, **base member 1 is for resting on a work surface**. Third, **base member 1 supports the weight of arm assembly 4 above the work surface**. To one of ordinary skill in the art, the clamp portion 5 of base member 1 is an appendage of base member 1 to support overturning torque. The same would be applicable to the clamp of the low profile mount, the grommets of the grommet mount, the bolt of the bolt mount, and the screws of the direct mount.

Ex. 14 at M7 Chart, pg. 1. Dr. Akin provides no facts or analysis to support his conclusory statements. He merely parrots back the court's claim construction.

The Federal Circuit rejected similar testimony in *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000), where the expert opined that "[T]he so-

---

[7] "Base member 1" refers to this image Dr. Akin created (Ex. 14 at M7 Chart, pg. 1):



called JNet is a TST switch." The Court rejected the patent holder's attempt to avoid summary judgment based on this testimony because it consisted of nothing more than "an unsupported conclusion that a critical claim limitation is satisfied." *Id*. at 1048. Instead, to raise a genuine issue of material fact, the Court held that an expert "must set forth the factual foundation for his opinion – such as a statement regarding the structure found in the accused product – in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court." *Id*. at 1047.

Dr. Akin's report is conclusory, just as the expert testimony in *Arthur A. Collins*. Consequently, Mass cannot rely on Dr. Akin's opinions to avoid summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Court should grant summary judgment of non-infringement to Humanscale.

| | |
|---|---|
| Dated:  December 20, 2013 | By:  /s/ Frederic M. Meeker |
| | Frederic M. Meeker (VA Bar No. 34471) |
| | fmeeker@bannerwitcoff.com |
| | Christopher B. Roth (VA Bar No. 44499) |
| | croth@bannerwitcoff.com |
| | BANNER & WITCOFF, LTD. |
| | 1100 13th Street, N.W., Suite 1200 |
| | Washington, DC 20005-4051 |
| | Telephone:  (202) 824-3000 |
| | Facsimile:  (202) 824-3001 |
| | |
| | Kurt J. Niederluecke |
| | kniederluecke@fredlaw.com |
| | Adam R. Steinert |
| | asteinert@fredlaw.com |
| | FREDRIKSON & BYRON, P.A. |
| | 200 South Sixth Street, Suite 4000 |
| | Minneapolis, MN  55402-1425 |
| | Telephone:  (612) 492-7000 |
| | Facsimile:  (612) 492-7077 |

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, I will ELECTRONICALLY FILE the foregoing HUMANSCALE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> F. Elizabeth Burgin Waller (VSB No. 74726)
> WOODS ROGERS PLC
> P.O. Box 14125
> 10 South Jefferson Street, Suite 1400
> Roanoke, Virginia 24038-4125
> bburgin@woodsrogers.com
>
> John J. Edmonds
> Stephen F. Schlather
> COLLINS EDMONDS POGORZELSKI
> SCHLATHER & TOWER PLLC
> 1616 Voss Road, Suite 125
> Houston, Texas 77057
> jedmonds@cepiplaw.com
> sschlather@cepiplaw.com

> /s/ Frederic M. Meeker
> Frederic M. Meeker (VA Bar #34471)
> BANNER & WITCOFF, LTD.
> 1100 13th Street, N.W., Suite 1200
> Washington, D.C. 20005-4051
> Telephone: (202) 824-3000
> Facsimile: (202) 824-3001
> fmeeker@bannerwitcoff.com